JETTA GREENBERG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Greenberg v. Commissioner
Docket No. 2751-87.
United States Tax Court
T.C. Memo 1989-12; 1989 Tax Ct. Memo LEXIS 12; 56 T.C.M. (CCH) 1030; T.C.M. (RIA) 89012; January 10, 1989. *12 Steven Rabinovitz, for the petitioner. Terry Zabel, for the respondent. RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Taxable Year Ended
Deficiency
December 31, 1980
$ 39,931
December 31, 1981
$ 19,572
December 31, 1982
$  3,373
After concessions, the sole issue for decision is whether Flight Airlines, Inc., a corporation controlled by petitioner's spouse and brother-in-law, should be disregarded as a separate taxable entity, thereby permitting its shareholders to deduct their distributive shares of the losses and investment credit attributable to property held by the corporation. This case was submitted fully stipulated. The stipulation and attached exhibits are incorporated herein by this reference. Petitioner filed joint Federal income tax returns with her husband Sheldon Greenberg, now deceased, during the years in issue. Petitioner resided in West Bloomfield, Michigan when she filed her petition in this case. Flight Airlines, Inc. was incorporated as a Michigan corporation on October 3, 1980. Sheldon Greenberg was treasurer and Barton *13 Greenberg, petitioner's brother-in-law, was president. The articles of incorporation authorized the corporation to engage in any business lawful in the State of Michigan. The corporation was formed so that the purchase of a helicopter could be financed without violating the usury laws of the State of Michigan. The corporation did not issue any capital stock, apply for a Federal Identification number, maintain a record of corporate minutes, nor file Federal income tax returns. Flight Airlines, Inc. did file an annual report during each of the years as required by Michigan law. The report stated that Flight Airlines, Inc. was engaged in the business of leasing. Shortly before incorporating Flight Airlines, Inc., Barton and Sheldon Greenberg formed a partnership called Greenberg and Greenberg. The partnership was formed for the purpose of leasing a helicopter. For each of the years in issue the Greenberg and Greenberg partnership filed Forms 1065, United States Partnership Return of Income. On October 8, 1980, Flight Airlines, Inc. borrowed $ 300,000 from Manufacturer's National Bank of Detroit (Manufacturer's National) to finance the purchase of a Jet Ranger Helicopter. Flight *14 Airlines, Inc., by its chairman Barton Greenberg, executed a promissory note to evidence the transaction. On the same date, Flight Airlines, Inc., by its chairman Barton Greenberg, also executed a "Borrower's Authorization Form" directing Manufacturer's National to pay the proceeds of the loan directly to the Chase Manhattan Bank for credit to the account of Textron, Inc. Barton Greenberg, continuing to act in his capacity as chairman of Flight Airlines, Inc., also executed a purchase money chattel mortgage granting Manufacturer's National a security interest in the newly purchased helicopter. The helicopter was titled and registered in the name of Flight Airlines, Inc. Following the purchase, the corporation leased the helicopter to the Greenberg and Greenberg partnership and to McMahon Helicopter Services, Inc. Although no written documents memorializing these leases currently exist, the parties are in agreement as to the basic provisions. The lease agreement provided that Flight Airlines, Inc., as lessor, and Greenberg and Greenberg would bear responsibility for all expenses relating to the helicopter. Flight Airlines, Inc. was also obligated to carry public liability and *15 property damage insurance satisfying the Civil Aeronautic Board's requirements governing air taxi operators. The lease agreements also provided that the lessee would bear the entire risk of loss and damage and that the lessor would hold the lessee harmless unless the lessee was negligent or committed intentional tortious acts. Flight Airlines, Inc. was also obligated to pay all property taxes assessed against the helicopter. The Greenberg and Greenberg partnership then entered into an identical lease agreement with Diamond Mortgage Company with respect to the same helicopter. Diamond Mortgage Company is a corporation whose shares are owned equally by Sheldon and Barton Greenberg. During the years in issue, all receipts, deposits, payments, and expenses relating to the helicopter were recorded in the books of account of Flight Airlines, Inc. In addition, all receipts from the helicopter leasing activity were deposited in a checking account owned by Flight Airlines, Inc. Flight Airlines, Inc. also borrowed money from Diamond Mortgage Company to finance its operations. For their taxable years 1980, 1981, and 1982, petitioner and her spouse reported losses from the Greenberg *16 and Greenberg partnership in the amounts of $ 30,235, $ 77,997, and $ 53,474, [1] respectively. They also claimed an investment tax credit of $ 18,787 in 1980. The reported losses and credit were based on petitioner's position that the helicopter was owned by the partnership and that Flight Airlines, Inc. was merely its agent. All of these amounts were disallowed in the statutory notice of deficiency dated November 4, 1986. Petitioner contends that Flight Airlines, Inc. did not engage in sufficient business activities to be considered a separate taxable entity and that it merely held title to property as agent for the Greenberg and Greenberg partnership. Respondent counters that the corporation should not be disregarded for tax purposes because petitioner has failed to establish the existence of a genuine agency relationship. Petitioner bears the burden of proof. ; Rule 142(a). *17 In , the Supreme Court held open the possibility that an otherwise separate taxable corporate entity could qualify as a nontaxable agent of its owner-principal. The Court set forth six factors that must be considered in determining whether an agency relationship will be recognized: [1] Whether the corporation operates in the name and for the account of the principal, [2] binds the principal by its actions, [3] transmits money received to its principal, and [4] whether receipt of income is attributable to the services of employees of the principal and to assets belonging to the principal are some of the relevant considerations in determining whether a true agency exists. [5]If the corporation is a true agent, its relations with its principal must not be dependent upon the fact that it is owned by the principal, if such is the case. [6] Its business purpose must be the carrying on of the normal duties of an agent. [. Footnote *18 refs. omitted.] In , the Supreme Court reviewed its decision in National Carbide.The Court reiterated the applicability of the six indicia of agency set forth in National Carbide, but indicated that these six factors were not to be read as a "governing statute" for determining whether a genuine agency relationship exists. . The Court specifically rejected the government's contention that the fifth National Carbide factor can only be established by evidence that the corporation and its owner-principal dealt at arm's-length and that there was an agency fee paid. . The Court did state, however, that a taxpayer/shareholder who is attempting to establish that his or her corporation was acting as an agent must present "unequivocal evidence of genuineness" of the existience of an agency relationship. . The *19 Supreme Court's reason for requiring "unequivocal evidence" of the agency relationship was to prevent the undermining of the principles of which held that a corporation is a separate taxable entity regardless of the fact that it has only one shareholder who has total control. . To adhere to a lesser standard would compromise the integrity of the corporate tax structure. Obviously, Moline's separate-entity principle would be significantly compromised if shareholders of closely held corporations could, by clothing the corporation with some attributes of agency with respect to particular assets, leave themselves free at the end of the tax year to make a claim - perhaps even a good-faith claim - of either agent or owner status, depending upon which choice turns out to minimize their tax liability. [.] The record in this case fails to establish that the requirements set forth in Bollinger *20 have been satisfied. Petitioner concedes that the nature of the relationship between the corporation and its shareholders is poorly documented, but urges this Court to infer that an agency relationship existed. We are unable to make this finding. The evidence presented leads to the conclusion that Flight Airlines, Inc. operated as a separate taxable entity. The corporation did not enter into a written agreement establishing an agency relationship with its shareholders or the partnership. All documents executed by the corporation were signed in the name of Flight Airlines, Inc. by Barton Greenberg in his capacity as chairman of the board. On none of these documents is there any indication that the corporation was acting as an agent. The corporation maintained its own bank account in which all of the receipts from the helicopter leasing activity were deposited. The corporation also maintained its own account books in which the receipts, deposits, payments, and expenses associated with the helicopter were recorded. The corporation borrowed money in its own name, held property in its own name, and mortgaged property in its own name. Petitioner has not established that an agency relationship *21 existed between Flight Airlines, Inc. and the partnership. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. In the Stipulation of Facts, a figure of $ 54,474 is reported. An examination of petitioner's 1982 return reveals that the above figure is correct.↩